DRAFT 10-24-06
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0412 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM ORDER

CONTI, District Judge

*Introduction*

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Bruce Adams ("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, *et seq.*, and supplemental social security ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381, *et seq.* Plaintiff contends that the decision of the administrative law judge (the "ALJ") that he is not disabled, and therefore not entitled to benefits, should be reversed because the decision is not supported by substantial evidence and that the case should be remanded for the ALJ to consider properly all the evidence as presented. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. After reviewing the

decision in light of the record, the court will grant defendant's motion for summary judgment, and deny plaintiff's motion.

## *Procedural History*

Plaintiff filed the SSI and DIB applications at issue in this appeal on a protective basis on July 17, 2003, asserting a disability since July 1, 2003 by reason of a schizoaffective disorder. (R. at 63, 83-86.)  He was denied at the initial level (R. at 63-66), and then filed a request for a hearing.  (R. 67.)

On July 21, 2005, a hearing was held before the ALJ.  (R. at 32-60.)  Plaintiff appeared at the hearing and testified.  (R. at 36-49.)  The ALJ also took the testimony of Rochelle Schimmel, a social worker.  (R.49- 52.)  Finally, Tanya Shullo, a vocational expert (the "VE") also testified. (R. at 52-58.)  Plaintiff was represented by an attorney at the hearing.  (R. at 34.)

In a decision dated September 8, 2005, the ALJ determined that plaintiff was not disabled and, therefore, not entitled to benefits.  (R. at 22.)  Plaintiff timely requested a review of that determination and by letter dated January 6, 2006, the Appeals Council denied the request for review.  (R. at 4-8.)  Plaintiff subsequently commenced the present action seeking judicial review of the ALJ's decision.

## *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits.  42 U.S.C. § 405(g).  This court must determine whether there is substantial evidence which supports the findings of the Commissioner.  42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir.

1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder.  Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).

### *Plaintiff's Background and Medical Evidence*

Plaintiff was born on December 21, 1979, and was 25 years old at the time of the administrative hearing.  (R. at 36.)  He has a GED, and can read, write, and perform basic mathematics.  (R. 36-37.)  His past relevant work includes jobs as a cook, grocery stocker, pizza deliveryman, and cashier.  (R. at 38, 40, 53.)  Since losing his last job, plaintiff has survived on welfare payments and Medicaid, and lives with his parents.  (R. at 36, 38-39.)

At the hearing, plaintiff stated that he did not believe he could work because, when he last worked, he found that he "couldn't get along with people" and could not tolerate stress.  (R. at 37.)  Additionally, plaintiff claimed that panic attacks plagued him while he was working. (R. at 46.)  Consequently, plaintiff explained, he had kept to himself when he had been employed.  (R. at 44.)   Even so, plaintiff stated that he had been fired from a job as a food stocker in a grocery store, and added that he had quit his last job in 2003 when he had been hospitalized for five days for suicidal tendencies.  (R. at 38, 40.)  Plaintiff confessed that he did not try to work again after his discharge from the hospital in 2003.  (R. at 38.)

Regarding his medical regimen, plaintiff testified that he sees a psychiatrist every three months. (R. at 44.) Plaintiff's mental impairments were stabilized on medication, although he had received psychotherapy for his substance abuse problems until July 2004. (R. at 19-20, 45.) He added that, although his medications previously had caused side-effects, those side-effects had since subsided. (R. at 39.) Although plaintiff admitted that he had been hospitalized because of suicidal thoughts in the past, he denied having suicidal thoughts by the time of the hearing. (R. at 38.) In addition, plaintiff claimed that — although he had struggled with drug and alcohol abuse in the past – he had been drug free for the two years before the hearing, and a teetotaler for the past year. (R. at 49.) Plaintiff explained, however, that he had experienced auditory hallucinations since the age of 21, and claimed that he had heard voices as recently as the night before the hearing. (R. at 46.) Additionally, plaintiff claimed that — notwithstanding his medications — he still experienced hallucinations, panic attacks, depression, compulsive behavior, and anxiety on a daily-to-weekly basis. (R. at 47-48.) Plaintiff also testified that his anxiety caused him to have difficulty sleeping and concentrating. (R. at 43-44.)

Plaintiff also testified about his activities in general. Generally, plaintiff admitted that his psychiatrist had not advised him to curtail any of his activities. (R. at 45.) Specifically, plaintiff admitted that he cooks, does yard work, takes out the trash, washes dishes, watches television, plays on the computer, and shops for groceries. (R. at 41.) Plaintiff admitted that he was able to lift and carry packages when he went grocery shopping. (R. at 42.) He added that he has a driver's license and drives a car, and told the ALJ that he used public transportation to come to the hearing. (R. at 42.) Plaintiff stated that he drove himself to such things as doctor's appointments, the grocery store, or to Alcoholics Anonymous meetings. (R. at 42.)

The ALJ next took the testimony of Ms. Rochelle Schimmel, a social worker with fifteen years of experience who had known plaintiff for three years. (R. at 49.) Ms. Schimmel stated that she visited plaintiff at his home on a monthly basis trying to "motivate" plaintiff because, whenever she saw him, he was "just sitting in the house and . . . not doing anything." (R. at 50-51.) Although Ms. Schimmel stated that plaintiff had an "immaculate" record of attending — and even being ready early for — all of his appointments with her, she expressed doubt that she would be able to motivate him. (R. at 51-52.)

Finally, the ALJ heard from the VE. The VE testified that plaintiff's previous work ranged from light to heavy exertionally, and added that his jobs ran the gamut from unskilled, semi-skilled, and skilled. (R. at 54-56.) The ALJ then posed the following hypothetical question to the VE:

> Assume that I find that the [hypothetical person] is 25 years-old and has a GED education. Assume further that I find he can perform any exertional level, but is further limited by the following. The first one would be to deal with the public. The second, to have minimal interaction with peers and supervisors. The third one, to make complex decisions. The fourth one, to follow detailed instructions. The fifth one, to cope with the stress in emergency situations. The sixth one, to adapt to frequent changes in a work setting.

(R. at 56.) The VE opined that this hypothetical person could perform work as a marker, housekeeper and line-grader, all light, unskilled jobs that existed in significant numbers in the local and national economies. (R. at 56-57.) In response to a question from plaintiff's counsel, the VE added that the job as a housekeeper would permit periodic 15-minute breaks and could permit the hypothetical person to work alone, but conceded that that job would entail some contact with a supervisor. (R. at 57-58.)

The ALJ issued her decision on September 8, 2005.  (R. at 22.)  At step one of the five-step inquiry, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 1, 2003, the alleged date of onset.  (R. at 14.)  At steps two and three, the ALJ found that, although plaintiff suffered from a schizoaffective disorder and was in early sustained remission for a polysubstance abuse disorder — both "serious" impairments within the meaning of the regulations — his condition was not serious enough to meet or equal a listing.  (R. at 14-15.)  After reviewing the medical evidence, the ALJ found that plaintiff had sufficient residual functional capacity ("RFC") to perform work at any exertional level, so long as the job would permit him to avoid dealing with the public, involved no more than minimal interaction with peers and supervisors, required no complex decisions or detailed instructions, and did not require him to cope with stress in emergency situations or adapt to frequent changes in the workplace.[1]  (R. at 17-20.)  In light of this RFC, the ALJ made the step-four finding that plaintiff could not return to any of his past jobs.  (R. at 20-21.)  The ALJ made the further finding, however, that plaintiff could perform an array of other jobs — including that of cleaner/housekeeper, line grater, and marker — all of which existed in significant numbers in the local and national economies.  (R. at 21.)  Accordingly, the ALJ concluded that plaintiff was not disabled at step five.  (R. at 22.)

---

[1] A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  This assessment is required for an administrative law judge to perform the fourth and fifth steps of the sequential evaluation for disability claims.  See 20 C.F.R. § 404.1520(a)(4)(iv)-(v), (e), (f).  By reason of this case being decided at the fifth step, the ALJ was required to assess plaintiff's RFC.  See id.

Plaintiff timely filed the instant action on April 3, 2006. Plaintiff then filed a motion for summary judgment and a brief in support thereof on July 20, 2006. The Commissioner filed a motion for summary judgment of its own, along with a brief in support on August 21, 2006.

This matter is now ready for decision. For the reasons set forth below, plaintiff's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted.

*Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. §§ 404.1520, 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past

relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. See Burns, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

To recapitulate, in the instant case, the ALJ found the following: (1) plaintiff has not engaged in substantial gainful activity since June 1, 2003; (2) plaintiff suffers from a schizoaffective disorder and polysubstance abuse in early sustained remission, which are severe; (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any of his past relevant work; but that (5) given plaintiff's RFC, there were jobs in the national economy that he could perform. (R. at 14-22.)

In his motion, plaintiff asserts but one assignment of error. Specifically, he maintains that the ALJ committed reversible error when she rejected the opinions of two examining physicians in favor of the opinion of a reviewing physician. Insofar as mental impairments turn heavily on the credibility of the witness, the court cannot reach the issue plaintiff has raised without reviewing the ALJ's findings regarding plaintiff's credibility — findings which plaintiff did not challenge. Accordingly, the court will turn to the question of plaintiff's credibility first, and evaluate the ALJ's handling of the medical evidence in light of that evidence.

### A. The Court Must Accept The ALJ's Determination That Plaintiff's Testimony Was Less Than Fully Credible

The ALJ made a specific determination that plaintiff's testimony with respect to his subjective symptoms and his nonexertional limitations was not entirely credible. (R. at 19-20). As noted above, the value of the medical evidence of a claimant's nonexertional limitations – including mental impairments – will depend in large part upon how credible the claimant's testimony is. See Rutherford v. Barnhart, 300 F.3d 546, 554 (3d Cir. 2005) (noting that a claimant's RFC is derived by ascertaining his credibly established physical and mental limitations); see also Phoy v. Barnhart, No. Civ. A. 05-2791, 2006 WL 680927, at *2 (E.D. Pa. Mar. 10, 2006)(affirming an administrative law judge's finding that a claimant's alleged limitations from her mental impairment were not disabling, where the determination was based in part upon the administrative law judge's conclusions that the claimant's subjective symptom complaints were not credible). Accordingly, the court must determine the scope of the ALJ's adverse credibility determination and – because plaintiff did not challenge that finding – fully credit it. This will enable the court to reconstruct the lens through which the ALJ viewed the medical evidence, and will be essential to determine whether the conclusions the ALJ drew from that evidence are supported by substantial evidence.

Under the regulations, it is the administrative law judge's job to determine the extent to which a claimant is accurately stating his or her subjective symptoms or the extent to which he or she is disabled by them. See 20 C.F.R. § 404.1529(c). In other words, credibility determinations are for the administrative law judge to make. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.1983).

Although it is lengthy and detailed, the ALJ's reasons for finding that plaintiff's testimony is less than fully credible are worth setting forth in full:

> I have carefully evaluated [plaintiff's] subjective assertions with respect to mental limitations but do not find them entirely credible. I observed [him] at the hearing and noted that he showed no signs of significant discomfort or mental confusion. He was able to present his case in a reasonable fashion. [His] assertions with respect to mental functional limitations do not appear particularly credible especially in view of his treating source's findings. He seems to be tolerating his treatment program satisfactorily and is maintained on medication. He reported some anxiety, paranoia, social isolation and functional loss, but he described a wide range of activities [that he undertakes]. He lives with his parents and independently performs household chores. In view of the medical and other evidence described above, I find that [plaintiff's] statements regarding the effect of his impairments on his ability to work are not credible. [His] social anxiety limits his ability to work around groups of people[;] however he would be able to work in a low stress, low social environment. He is able to think, remember, and understand satisfactorily. [He] testified about being nervous around people and that he is not trusting of others. He said that stress is difficult[] for him and that it is hard for him to learn things. The record provides a basis for fluctuating moods and some difficulty concentrating but not to a disabling extent. His thought processes are in order. The record does not show serious side-effects from his medications. [He] is able to participate in a household with his parents and can do a fair range of activities, consistent with the [RFC] adopted here. He independently performs activities of daily living, household chores, personal care, mowing the lawn, and he enjoys listening to music, watching television, and using his computer. He maintains a Pennsylvania driver's license and indicated that he can use public transportation. [Plaintiff's] mental impairments reasonabl[y] may be expected to limit his ability to perform all but the simplest tasks, but to the extent [he] alleges that he cannot work within the scope of the [RFC] adopted [here], I find the allegations not credible. The record falls short of showing that his conditions are disabling for any 12-month period.
> 
> The medical record provides a basis for functional limitations but not outside the [RFC] established here. I find that the ultimate allegation that he cannot sustain any job is not consistent with the medical evidence and with his activities of daily living. Thus, while [plaintiff] reports significant limitations stemming from his impairments, the evidence of record, [in] its entirety, does not document any abnormality of function that is considered indicative of an inability to perform any jobs existing in significant numbers in the national economy.

(See R. at 19-20)(citations to record omitted).

Because plaintiff has not challenged the ALJ's finding that his testimony was less than fully credible, the court will not scrutinize the ALJ's credibility determination. See Hudson v. Sullivan, 717 F.Supp. 340, 345 (W.D. Pa. 1989)(declining to overturn an administrative law judge's decision on a ground that the claimant had not raised). In any event, the reasons the ALJ offered for this finding – i.e., that the extent of the limitations that plaintiff claimed were inconsistent with his level of functioning, his presentation at the hearing, the type of treatment he receives, and the factors that precipitate the symptoms for which there is evidence – were appropriate[2] and supported by the record.[3] Accordingly, in reviewing the ALJ's assessment of the medical evidence, the court must credit fully her determination that plaintiff's testimony was not entirely credible.

### B.     Substantial Evidence Supports The ALJ's Conclusion That Plaintiff's Mental Impairments Were Not Disabling

Bearing in mind the ALJ's unchallenged finding that plaintiff's testimony was less than fully credible, the court now turns to the only issue that plaintiff does raise: whether the ALJ's ultimate conclusion that his mental impairments were non-disabling has substantial evidentiary support. Plaintiff insists not, arguing that the ALJ erred by "discount[ing] the opinions of the two consultative psychologists and instead sid[ing] with the opinion of the non-examining

---

[2]     See 20 C.F.R. § 416.927 (noting that an administrative law judge should consider a claimant's daily activities, the type of treatment he receives, and the factors that precipitate symptoms, inter alia, when assessing his credibility).

[3]     See R. at 122-24, 130-33, 140-42 (describing the extent of plaintiff's activities); see also R. at 184-85 (noting that plaintiff's mood and hallucinations were controlled with medication without side-effects), 187 (noting improvement of plaintiff's symptoms on medication), 201-02 (noting that plaintiff had continued to abstain from drugs and alcohol), 203 (observing that, when plaintiff took his medications, his mood began to stabilize).

physician." (Pl. Brief at 12.) Although defendant concedes that the ALJ afforded greater weight to the reviewing physician's opinion than to those rendered by the examining physicians, defendant maintains that substantial evidence supports the weight given by the ALJ to the opinions. After reviewing the decision in light of the medical record, the court agrees with defendant.

It is a rare decision that does not involve some sort of conflict in the medical evidence. When medical testimony is inconsistent, an administrative law judge is required to choose between the conflicting evidence. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981). The opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him. See Brewsler v. Heckler, 786 F.2d 581, 585 (3d Cir.1986). For that reason, the opinions of a reviewing physician ordinarily are entitled to less weight than those of a physician who has examined the claimant. See Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984); see also 20 C.F.R. § 404.1527(d)(1). The weight a nonexamining source's opinion receives depends, however, upon the degree to which he provides supporting explanations for his opinion. See 20 C.F.R. § 404.1527(d)(3). Thus, the better an explanation a nonexamining source provides for his opinion, the more weight that opinion will receive. Id. Finally, an opinion that is consistent with the record as a whole will receive more weight than one that is not. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).

In this case, the ALJ was faced with a conflict between an opinion of a reviewing physician, Dr. Sharon B. Tarter, Ph.D., and the opinions of Dr. Marvin D. Wheeler, Ph.D. and Dr. John Rohar, Ph.D., the examining physicians. (R. at 18-20.) Because these doctors'

opinions are central to the dispute that plaintiff's motion raises, the court will summarize those opinions and the reasons given by the ALJ for the weight she gave each opinion.

Dr. Rohar performed a psychological examination of plaintiff on October 29, 2003. (R. at 215-22.) After his conversation with plaintiff, Dr. Rohar diagnosed a schizoaffective disorder and assessed plaintiff's Global Assessment of Functioning ("GAF") at 50.[4] This examining physician found that plaintiff was of "low-average intelligence" and that he had only "slight" restrictions in his ability to understand, remember, and carry out short, simple instructions. (R. at 220-21.) Dr. Rohar added, however, that plaintiff would have several functional limitations in the workplace, including a "moderate" impairment of his ability to understand and remember detailed instructions, and "marked" limitations in his ability to carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, supervisors, or co-workers, and respond appropriately to the pressures and changes of a usual work setting, and opined that plaintiff was not in a position to manage his own funds. (R. at 221-

---

[4] The GAF assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. A GAF score of between 50-60 denotes moderate impairment. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000); see Lozada v. Barnhart, 331 F.Supp.2d 325, 330 n.2 (E.D. Pa. 2004). An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . .)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . . ." (Id.)

22.) Dr. Rohar noted that plaintiff's own recitation of his symptoms informed these assessments. (R. 221.)

Contrary to plaintiff's contentions, the ALJ did not "disregard" Dr. Rohar's opinion. Rather, the ALJ attempted to reconcile her RFC assessment with Dr. Rohar's assessment of the functional effects of plaintiff's mental limitations:

> Dr. Rohar found several severe mental limitations, as I do here, but I believe that these have been accommodated in the [RFC] adopted here, which provides for simple, routine tasks with minimal interaction with peers and supervisors, no interaction with the public, no complex decisions or following detailed instructions, no coping with stress in emergency situations, and not having to adapt to frequent changes in a work setting.

(R. at 18.) Although plaintiff generally contends that he "is in no shape at this point to be a reliable full-time employee," he does not claim that Dr. Rohar opined to any other <u>specific</u> functional limitations that he believes the ALJ should have included in her RFC assessment.

Dr. Wheeler performed a psychiatric examination of plaintiff on June 25, 2005. (R. at 245-49.) Dr. Wheeler accepted plaintiff's recitation of his history, and — after administering an IQ test — found that he was in the low-average or borderline range of intelligence. (R. at 246.) Dr. Wheeler agreed with the other physicians' opinions that plaintiff suffers from a schizoaffective disorder, and estimated that his GAF was "around 50." (R. at 247.) This examiner found that plaintiff "would seemingly have difficulty maintaining a residence, paying bills, and maintaining a level of self-care." (R. at 247.) He opined that plaintiff would have a "slight" impairment in his ability to carry out short, simple instructions, a "moderate" impairment in his ability to understand and remember detailed instructions, and "marked" limitations in his ability to carry out detailed instructions and make simple work-related judgments. (R. at 248.)

Additionally, Dr. Wheeler found that plaintiff would experience a "moderate" limitation in his ability to interact appropriately with the public, "marked" limitations in his ability to interact appropriately with supervisors and co-workers, and "extreme" limitations in responding to routine changes or pressures in the work-setting. (R. at 248.) In all other areas, Dr. Wheeler opined that plaintiff would experience "marked" limitations in functioning, although he did consider plaintiff capable of managing funds in his own interest. (R. at 249.)

The ALJ made the explicit finding that Dr. Wheeler's opinion was not persuasive. She explained:

> Dr. Wheeler essentially relied on [plaintiff's] subjective complaints as opposed to his own clinical findings. In addition, Dr. Wheeler's opinion is inconsistent with [plaintiff's] described activities. [Plaintiff] does a number of household chores, can independently heave his home, is capable of driving and taking public transportation, and enjoys listening to music and using his computer.

(R. at 19.) For these reasons, the ALJ explained that she found Dr. Wheeling's conclusions to be "unavailing." (R. at 19.)

The court finds that the ALJ's unchallenged adverse credibility determination supports this conclusion. To the extent that an examining physician's impressions are based on a claimant's comments during the examination, they are properly discredited to the same extent that the claimant's testimony is found not credible. See 20 C.F.R. § 416.929 (providing that the administrative law judge is the ultimate fact-finder and bears the responsibility for making determinations of a claimant's credibility); accord Social Security Ruling ("SSR") 96-7p;[5] see

---

[5] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." Sullivan v. Zebley, 493 U.S. 521, 531 n. 9 (1990)(internal quotation marks omitted). "Rulings do

also Rodriguez v. Barnhart, No. Civ.A. 04-5375, 2005 WL 2250797, at *8 (E.D. Pa. Sep 15, 2005) (noting that, absent corroborating clinical data, a claimant's psychiatric complaints to doctors are only as valuable as the claimant is credible); Williams v. Apfel, No. CIV. A. 99-3670, 2000 WL 1201866, at *5 (E.D. Pa. Aug. 22, 2000)(noting with approval an administrative law judge's decision to credit a reviewing physician's opinion over that of the examining physician, where the examining physician's conclusions were based "in part, on the unreliable statements of the claimant").

  As plaintiff points out, the ALJ did accept the November 20, 2003 opinion of Dr. Tarter, who reviewed plaintiff's medical file. (R. at 223-28.) Dr. Tarter diagnosed plaintiff with a substance addiction disorder as well as an affective disorder, namely, schizophrenia. (R. at 223, 226.) She found, however, that plaintiff's mental impairment was not severe enough to meet or equal a listing, and checked boxes indicating that he had no repeated episodes of decompensation, "mild" restrictions of daily living activities, and "moderate" impairment of concentration, persistence, or pace and only "moderate" difficulty in maintaining social functioning. (R. at 233-24.) Dr. Tarter also determined that the record supported "moderate" limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular punctual attendance; sustain an ordinary routine without special supervision; work around others without being distracted; make simple, work-related judgments; and complete a normal

---

not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings." Heckler v. Edwards, 465 U.S. 870, 874 n. 3 (1984)(internal quotation marks omitted).

workday. (R. at 236.) She also considered plaintiff to be moderately impaired in all areas of social interaction, and in most areas of adaptation. (R. at 237.) Dr. Tarter specifically stated that, in her view, plaintiff's complaints were only partially credible, and added that she was giving Dr. Rohar's opinion less than full weight "due to inconsistencies with the totality of the evidence in file." (R. at 238.)

Although plaintiff attempts to cast this claim as a simple head-counting exercise – insisting that the ALJ erred by accepting the opinion of <u>one</u> reviewing physician over those of <u>two</u> examining physicians – the court finds this characterization to be an oversimplification of the decision the ALJ actually made.[6] As the ALJ explained, she ultimately credited Dr. Tarter's assessment because it was most consistent with the evidence of record, and accepted Dr. Rohar's opinion to the extent that it could be harmonized with the rest of the evidence. (R. at 18.) After paring away plaintiff's testimony about the limiting effects of his impairment – as the court must, given the ALJ's unchallenged adverse credibility determination – the record supports this finding.

For example, the record reflects that the symptoms of plaintiff's mental impairment were controlled with medication. (R. at 184-85, 187, 203). Additionally, the psychotherapy plaintiff had received for his substance abuse problems evidently was effective, as he continued to abstain from drug and alcohol abuse and then discontinued that therapy. (R . at 49(memorializing plaintiff's testimony that he had stayed drug-free and sober), 201-02 (noting that plaintiff had abstained from drugs and alcohol), 246 (same).) It bears emphasis that a condition that is

---

[6] Even if the matter were that simple, the court is mindful that the evaluations of nonexamining physicians can constitute substantial evidence. <u>See</u> <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir.1991).

reasonably controlled with treatment and medication cannot serve as a basis for disability.[7] Indeed, plaintiff's only episode of decompensation – the July 2003 hospitalization – occurred when he stopped taking his medication. (R. at 208.)  Finally – but for that one episode, when his GAF score was 30[8] (R. at 164) – plaintiff's GAF scores were around 50.[9] (R. at 188, 219, 247, 294).

After careful perusal of the record, the court concludes that the ALJ did not err in finding the reviewing physician's report more consistent with the medical evidence – including the notes of plaintiff's own treating physician – than was that of the examining physicians.  Because the weight afforded by the ALJ to the opinions of the reviewing and examining physicians is supported by substantial evidence, it will not be disturbed.

---

[7] See 20 C.F.R. § 416.930(a); see also Brown v. Bowen, 845 F.2d 1211, 1215 (3d Cir. 1988) (stating that if treatment or medication can control an impairment, it cannot be considered disabling); Melton ex. rel. v. Sec'y of Health and Human Servs., 737 F.Supp. 867, 870 n.3 (E.D. Pa. 1990)(noting that, where the record showed that a claimant had "progress from psychotherapy and with medication to control his depression," the ALJ was precluded from finding that he was disabled due to a psychological impairment.).

[8] See n.4 supra.

[9] See n.4 supra.  Indeed, plaintiff's low GAF of 30 was assessed at the nadir of an episode in which he admitted he had been abusing alcohol. (R. at 163-64.)   It is axiomatic that GAF scores may be "deflated as a result of polysubstance abuse," and given less weight when they are otherwise "inconsistent with other mental status evidence of record."  Bovell v. Barnhart, No. 05-2140, 2006 WL 1620178, at *3 (E.D. Pa. June 09, 2006)

*Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that substantial evidence supports the ALJ's finding that plaintiff is not disabled.  The decision of the ALJ denying plaintiff's application for SSI and DIB is affirmed.  Therefore, plaintiff's motion for summary judgment (Docket No. 6) is **DENIED**, and  defendant's motion for summary judgment (Docket No. 8) is **GRANTED**.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Bruce Adams.

The clerk shall mark this case as closed.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: October 25, 2006


cc:	Counsel of record